UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
EDWARD R. LEASURE,

                              Petitioner,

                                                          **MEMORANDUM & ORDER**
            - against -                                      21-CV-2598 (PKC)

WILLIAM F. KEYSER,

                              Respondent.
--------------------------------------------------------x

PAMELA K. CHEN, United States District Judge:

Edward R. Leasure ("Petitioner") brings this *pro se* Petition for Writ of *Habeas Corpus*, pursuant to 28 U.S.C. § 2254, challenging his convictions for Conspiracy in the Second Degree and two counts of Burglary in the First Degree. Petitioner sets forth five claims for relief, all pertaining to the voluntariness of his plea or to the effectiveness of his trial counsel. Because Petitioner's claims are procedurally barred and/or without merit, his *habeas* Petition is denied.

## BACKGROUND

### I.   Petitioner's Criminal Prosecution

#### A.   Petitioner's Arrest

In 2015, Petitioner was charged with two counts of Burglary in the First Degree, N.Y. Penal Law § 140.30-4; one count of Robbery in the First Degree, N.Y. Penal Law § 160.15-4; two counts of Criminal Possession of a Weapon in the Second Degree, N.Y. Penal Law §§ 265.03-1(b), 265.03-3; one count of Assault in the Second Degree, N.Y. Penal Law § 120.05-6; one count of Criminal Possession of a Weapon in the Third Degree, N.Y. Penal Law § 265.02-1; and one count of Unlawful Imprisonment in the First Degree, N.Y. Penal Law § 135.10, arising out of his armed

invasion of two residences in Queens County.   (State Ct. R. ("SCR"), Dkt. 21, at 1–7.[1])

Additionally, while in jail for the robbery charges, Petitioner conspired with his girlfriend and

father to hire a hitman to kill the witness against him.  (*See id.* at 9–13, 68, 406–07.)  For these

acts, Petitioner was charged with Conspiracy in the Second Degree, N.Y. Penal Law § 105.15; and

Criminal Solicitation in the Second Degree, N.Y. Penal Law § 100.10.  (*Id.* at 9–13.)

### B.   Petitioner's Competency Hearing Request

In July 2016, while awaiting trial, Petitioner was admitted to Bellevue Psychiatric Hospital

after being found "banging his head on the wall and eating his own feces" in the jail facility.  (*See

id.* at 299.)  On August 5, 2016, after Petitioner was released from the hospital, he and his attorney,

Debrajoy Friedenberg, appeared before Justice Barry A. Schwartz of the New York Supreme

Court.  (*See id.* at 14–15.)  Friedenberg informed Justice Schwartz that her client was "making a

claim . . . that he ha[d] psychiatric issues and that they r[o]se to the level of him being unprepared

mentally to take [his case] to trial."  (*Id.* at 16.)   Although Petitioner wanted a competency

evaluation under N.Y. Crim. Proc. Law § 730, Friedenberg stated that, based on her "30 years" of

experience, Petitioner's mental health conditions did not rise to the level of being mentally

unprepared for trial.  (*Id.*)  She declined to "make that application [for a competency evaluation]

on [Petitioner's] behalf because it [would be] disingenuous at th[at] point."  (*Id.*)  Petitioner himself

requested a competency evaluation, informing Justice Schwartz that he suffered from "maniac

[sic] depression," he had "spent the whole week at [the] psychiatric ward at Bellevue Hospital,"

and he could not cope if he did not take his psychiatric medications.  (*Id.* at 17.)

---

[1] The State Court Record was filed in five separate docket entries.  (*See* Dkt. 21; Dkt. 21-1; Dkt. 21-2; Dkt. 21-2; Dkt. 21-3; Dkt. 21-4.)  These docket entries include a Bates numbering with the prefix "SR" running continuously through the different entries.  In the interest of clarity, when citing to the State Court Record, this Memorandum & Order will cite only to Dkt. 21 and rely on the Bates numbering system.

Justice Schwartz denied Petitioner's request for a competency evaluation. (*Id.* at 20–21.) First, Justice Schwartz stated that, because Petitioner was represented by counsel, his request for a competency evaluation needed to go through his attorney. (*Id.* at 18.) Second, Justice Schwartz explained that there was a distinction between having "some mental problems" and being competent to stand trial. (*Id.*) The judge advised Petitioner to "sit down with [his] lawyer . . . and have another conversation with her about [requesting a competency evaluation]." (*Id.* at 19.)

### C.    Petitioner's Plea

Shortly thereafter, Petitioner was offered a 24-year sentence in exchange for his plea to the two Burglary in the First Degree charges and the Conspiracy in the Second Degree charge. (*See id.* at 27–29, 32.) Justice Schwartz agreed that he would sentence Petitioner to 24 years' imprisonment based on that offer. (*Id.* at 24–25, 32.) Petitioner informed Justice Schwartz of his desire for a plea deal with a sentence of 18, 20, or 22 years instead of 24 years. (*Id.* at 24–25, 29.) Petitioner explained:

> Your Honor, I'm 37 years old. I've—at that time, it's about 22 years—22 years from now I will be about 59 and . . . with me having diabetes and things like that I won't have a chance because I'm already suffering from kidney[] problems. I'm already suffering from glaucoma, you know, and I'm trying to at least have it where I can pay my due to society and in a reasonable time, but still have time left to live my life if I make it through this because this a—a very long time, 20 something years, a very long time. And you know, I thought about it, you know, for a while. And the media, like, my case is high profile, so the media already knows everything that's going on, which means I won't have a fair impartial trial that I already think so. I'm willing to take the 20. You know, a couple of years makes a big difference when a person's life, in my medical situation, concerned. And I'm willing to take the 20.

(*Id.* at 25.) Petitioner also expressed reluctance about pleading to Conspiracy in the Second Degree, because he didn't "know nothing about the case." (*See id.* at 26–28.)

The prosecutor explained that there was "no room for any negotiation" for "[a]nything less" than the 24 years being offered. (*Id.* at 28.) In essence, the prosecutor explained, Petitioner was "looking at up to 65 years [if he proceeded to trial]." (*Id.*) Moreover, Petitioner was facing "another 25 years for [the conspiracy charge] alone." (*Id.* at 27.) According to the prosecutor, assuming that all of the sentences on these charges would run consecutively, Petitioner would save "over 50 years if he were to take the plea that's being offered." (*Id.* at 28.) Justice Schwartz agreed that such a deal would be "much to [Petitioner's] advantage."

Petitioner agreed to take the offer, explaining that "every year makes a big difference. So anything from 24, 25, is a blessing to me. So even if it is 22, then I'll take that if I can't get the 20." (*Id.* at 29–30.) And after a couple of short recesses, in which Petitioner discussed the plea deal with his mother and Friedenberg explained the conspiracy charge to Petitioner, he pled guilty to two counts of Burglary in the First Degree and one count of Conspiracy in the Second Degree. (*See id.* at 29–32, 36–40.) Petitioner stated that he had not taken drugs or alcohol in the past 24 hours, that there was no reason why he would not understand what was going on that day, and that he had discussed the terms of his plea with his attorney. (*Id.* at 33–34.) Petitioner reviewed a waiver of the right to appeal with his attorney, and confirmed with Justice Schwartz that he was waiving "the right to argue any issue pertaining to [his] conviction and sentence and to have a higher Court decide whether the conviction or sentence should be set aside." (*Id.* at 36.) The signed waiver additionally provided that Petitioner waived "any issue regarding the effectiveness of counsel prior to [his] plea in this case and any issue with regard to the imposition of [a] sentence." (*Id.* at 43.)

**D.      Petitioner's Motion to Vacate His Plea and Petitioner's Sentencing**

After entering his plea, Petitioner was again admitted to Bellevue Hospital for psychiatric conditions. (*See id.* at 57; *id.* at 332–341 (medical records from visit in October 2016).) On

4

November 11, 2016, Petitioner moved, *pro se*, to withdraw his plea and obtain new counsel. (*Id.* at 45, 62.) Petitioner claimed that his plea was not knowing and voluntary because, on the day he pled guilty, he was on Risperdal, Zoloft, and Vistaril, medications that caused sedation, impaired judgment, and mental confusion. (*Id.* at 48, 58–59.) Petitioner admitted that he had failed to disclose that he was on these medications during the plea colloquy because he thought that Justice Schwartz's reference to "drugs" was limited to "specific drugs as in cocaine, ecstasy things like that." (*Id.* at 59.) Petitioner attached documents indicating that he had "[m]ajor depressive disorder, recurrent episode, severe, specified as with psychotic behavior," but that he was making "great progress" in mental health treatment. (*Id.* at 50, 53–54.)

Justice Schwartz relieved Friedenberg of her representation of Petitioner. (*Id.* at 64.) Friedenberg informed the court:

> I want the record to reflect I'm giving the defendant back his medical records from Bellevue and I want it to reflect as well that[,] and this poses a potential ethical problem[,] but I want the record to reflect that I'm not in the habit of standing next to somebody who's taking a plea for that much time and not noticing that they're out of it. As your Honor knows, even a lay person can testify as to whether someone is intoxicated or not making sense of their surroundings, and I will stand by my actions on the day of the plea in negotiating this plea, in talking to him and I feel that my interests are totally now directly in contradiction to his.

(*Id.* at 65.)

On March 9, 2017, Justice Schwartz denied Petitioner's motion to vacate his plea. (*Id.* at 100–101.) He concluded that Petitioner's plea was knowing and voluntary based on Friedenberg's statements that her client was fit to proceed, Petitioner's affirmations that he understood the nature of the proceedings, and Petitioner's logical arguments when advocating in favor of a lower sentence. (*See id.* at 99–101.)

At sentencing, Petitioner's new counsel, Michael Anastasiou, asked Justice Schwartz "to [re]consider allowing him to withdraw his plea" given Petitioner's "psychiatric illnesses" and his

confusion about which charges he was pleading to in the colloquy. (*Id.* at 103–06.) Petitioner himself added that his prior attorney had "deliberately withheld . . . the fact that [he] wasn't in [his] right state of mind" during the plea negotiations and colloquy, and that she had encouraged Petitioner to take the plea deal. (*See id.* at 108.) Because of the "powerful medications" he was on, Petitioner shared, he was unable to "detect [his attorney's] coercion." (*Id.* at 109.) Moreover, Anastasiou noted, "at the time of these [criminal] incidents, [Petitioner] was also . . . suffering from his psychiatric illnesses." (*Id.* at 108–09.)

Justice Schwartz again denied the motion to withdraw the plea for the reasons set forth in his prior decision. (*Id.*) Accordingly, as provided for in the plea agreement, Justice Schwartz sentenced Petitioner to "two terms of imprisonment of 24 years, plus five years [of] post[-]release supervision [for the burglary counts] . . . and to a term of imprisonment of 12 to 24 years under the conspiracy count," all to run concurrently. (*Id.* at 111–12.)

## II.    Procedural Background

### A.    Direct Appeal

Petitioner appealed his conviction to the Second Department of the Appellate Division. (*Id.* at 114.) Petitioner argued that: (1) his plea was not knowing, intelligent, and voluntary because Justice Schwartz and the prosecutor had erroneously represented that Petitioner was facing a sentence of 90 years; (2) his plea was not voluntary because Justice Schwartz had failed to further inquire after Petitioner raised a potential psychiatric defense at sentencing; (3) his sentence was unduly harsh and excessive in light of his documented history of mental illness, (4) Anastasiou was ineffective by failing to move to withdraw Petitioner's plea on the basis that Petitioner was raising a psychiatric defense; and (5) Friedenberg was ineffective by failing to "correctly advise [him] of his true sentencing exposure." (*See id.* at 133–155.)

6

On November 13, 2019, the Appellate Division affirmed Petitioner's conviction. (*Id.* at 234.)  Because it concluded that Petitioner's appeal waiver was valid, the Appellate Division determined that Petitioner could only challenge the voluntariness of his plea and the effectiveness of his counsel. (*Id.* at 233–34).  However, it held that Petitioner's challenge to his plea was not preserved because "he did not move to withdraw his pleas on [the] ground[s]" he raised on appeal. (*Id.* at 233 (citing N.Y. Crim. Proc. Law § 470.05).)  "In any event," the Appellate Division held, "any alleged failure to inform the defendant of the statutory sentence calculations . . . did not render the pleas involuntary," "[t]here was nothing in the plea allocution that triggered the court's duty to inquire into a potential affirmative defense to the charges" or Petitioner's competency to stand trial, and Petitioner's challenge to his counsel's ineffectiveness was without merit. (*Id.* at 233–34).

On April 29, 2020, the New York Court of Appeals denied Petitioner leave to appeal. (*Id.* at 253.)

### B.     N.Y. Crim. Proc. Law § 440 Motion and Federal *Habeas* Petitions

Petitioner initiated this federal *habeas* matter on May 6, 2021. (Pet., Dkt. 1.)  Shortly thereafter, Petitioner informed the Court that he had moved before the New York Supreme Court to set aside his sentence pursuant to N.Y. Crim. Proc. Law § 440.10(2)(c) ("§ 440"), (Mot. to Hold Pet. Writ *Habeas Corpus* in Abeyance, Dkt. 6), on the basis that Justice Schwartz had failed to ask him if he was on mental health medication when entering his plea, and that Friedenberg was constitutionally ineffective by failing to (1) view Petitioner's mental health records, (2) determine whether Petitioner was "of sound mind" before entering his plea, and (3) raise a psychiatric defense. (*See* SCR, Dkt. 21, at 257, 263–290.)  The Court accordingly held the Petition in abeyance so that Petitioner could exhaust his state remedies. (07/14/2021 Dkt. Order.)

On March 10, 2023, the New York Supreme Court denied Petitioner's motion to set aside his sentence. (SCR, Dkt. 21-2, at 406, 416). The Supreme Court found that Petitioner's medications-based argument was barred from review because this issue was not "specifically raise[d]" on appeal. (*See id.* at 406, 408–11 (quoting N.Y. Crim. Proc. Law § 440.10(2)(c)).) The court further found that, "[i]n any event," Petitioner's claims were not "credible" because Justice Schwartz had asked Petitioner if he had taken any drugs before pleading guilty and if there was any reason he would not understand what was happening with the proceedings. (*See id.* at 412–16.) The Supreme Court also rejected Petitioner's ineffective assistance of counsel argument. Given that the "defendant expressed his desire to plead guilty, assisted in negotiating the sentence, answered all the court's questions appropriately, and conferred with counsel several times when necessary to clarify the court's instructions," it was clear that "counsel, after reviewing the psychiatric records . . . , made a strategic decision not to introduce them to the court." (*Id.* at 415.)

After the Appellate Division denied Petitioner leave to appeal, (*id.* at 679), Petitioner filed an amended *habeas* petition, (Am. Pet., Dkt. 12), which the Court now reviews.

## LEGAL STANDARD

Under 28 U.S.C. § 2254 ("Section 2254"), a federal district court is empowered to "entertain an application for a writ of *habeas corpus* on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." To obtain relief, an individual in custody must demonstrate, *inter alia*, that he has: (1) exhausted his potential State remedies; (2) asserted his claims in his State appeals such that they are not procedurally barred from federal *habeas* review; and, if his appeals were decided on the merits, (3) satisfied the deferential standard of review set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *Shinn v. Ramirez*, 596 U.S. 366, 377–79 (2022). Where, as here, a petitioner proceeds *pro se*, a court

8

liberally construes a petition and interprets it "to raise the strongest arguments that [it] suggest[s]." *See Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (italics and citation omitted). But the Court "need not act as an advocate for *pro se* litigants." *Davis v. Kelly*, 160 F.3d 917, 922 (2d Cir. 1998) (citing *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978)).

## DISCUSSION

Petitioner asserts he is entitled to a writ of *habeas corpus* for five reasons. First, Petitioner asserts that his plea was not knowing or voluntary because he was erroneously counseled by Justice Schwartz and the government that he faced a potential sentence as high as 90 years if found guilty at trial. (Am. Pet., Dkt. 12, at ECF[2] 5.) Second, Petitioner argues that Justice Schwartz's failure to inquire whether he was knowingly, intelligently, and voluntarily waiving a psychiatric defense and whether he was competent to proceed rendered his plea involuntary. (*See id.* at ECF 7, 41.) Third, Petitioner asserts that his sentence was unlawful because Justice Schwartz failed to ask Petitioner if he had taken any mental health medications during the plea colloquy. (*Id.* at ECF 10, 34, 39.) Fourth, Petitioner contends that his sentence was excessive given his severe mental illness, and that the appeal waiver barring him from challenging his sentence is unenforceable. (*See id.* at ECF 8–9.) Fifth, Petitioner asserts that Friedenberg was ineffective because she failed to provide "accurate evidence about [Petitioner's] true sentencing exposure," failed to investigate whether he was of sound mind to enter the plea, and withheld psychiatric evidence from the Court that would have allowed him to assert a defense of "not responsible by reason of mental disease or defect." (*Id.* at ECF 5, 12, 36, 39, 41–42.) For the following reasons, the Court finds that Petitioner's claims for relief are either procedurally barred or fail on the merits.

---

[2] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

**I.    Petitioner's Claims That Are Procedurally Barred.**

Federal courts are procedurally barred from reviewing "questions of federal law presented in a habeas petition when the State court's decision rests" upon a state procedural rule "that is independent of the federal question and adequate to support the judgment." *See Cone v. Bell*, 556 U.S. 449, 465 (2009) (internal quotation marks and citations omitted); *Harris v. Reed*, 489 U.S. 255, 260 (1989); *Murden v. Artuz*, 497 F.3d 178, 191–92 (2d Cir. 2007).    A decision is "independent" of a federal question where it does not "fairly appear[] to rest primarily on federal law, or [is not] interwoven with the federal law." *Coleman v. Thompson*, 501 U.S. 722, 733 (1991) (quoting *Michigan v. Long*, 463 U.S. 1032, 1040–41 (1983)), *modified on other grounds by Martinez v. Ryan*, 566 U.S. 1 (2012).    A State court's reliance on a procedural ground that is a "firmly established and regularly followed" state practice is "adequate to foreclose review." *Cruz v. Arizona*, 598 U.S. 17, 25–26 (2023) (quoting *Lee v. Kemma*, 534 U.S. 362, 376 (2002)).

The Court is procedurally barred from reviewing Petitioner's first and second claims for relief—that Justice Schwartz erroneously advised Petitioner that he faced a 90-year sentence and failed to inquire into his competency and whether he was waiving a psychiatric defense.    The Appellate Division determined that Petitioner had failed to raise these arguments in seeking to withdraw his plea and thus had not preserved them.    (SCR, Dkt. 21, at 233; *see also id.* at 48 (Petitioner's application to withdraw his plea making no mention of a 90-year sentence).)    In so ruling, the Appellate Division relied upon the well-established rule that a party must preserve an issue for appeal by registering "protest thereto" "at the time of such ruling or instruction or at any subsequent time when the court had an opportunity of effectively changing the same." N.Y. Crim. Proc. Law § 470.05(2); (*see also* SCR Dkt. 21, at 233 (citing *People v. Odom*, 83 N.Y.S.3d 624 (2d Dep't 2018))).    As the Second Circuit has repeatedly held, "New York courts' application of their rules regarding the preservation of legal issues for appellate review in criminal

cases . . . constitute independent and adequate state grounds." *McPherson v. Keyser*, No. 20-161-PR, 2021 WL 4452078, at *2 (2d Cir. Sep. 29, 2021) (summary order); *Garvey v. Duncan*, 485 F.3d 709, 720 (2d Cir. 2007) (concluding that "the procedural bar of [N.Y. Crim. Proc. Law] § 470.05(2) constitutes an independent and adequate state ground for the Appellate Division's holding").[3]  This conclusion holds even where, as here, the Appellate Division addressed the merits of the procedurally barred ground as an alternative holding.   (*See* SCR, Dkt. 21, at 233 (acknowledging that Petitioner failed to preserve an argument, and then explaining that, "[i]n any event," the argument lacked merit)); *Green v. Travis*, 414 F.3d 288, 294 (2d Cir. 2005) ("[E]ven when a state court says that a claim is 'not preserved for appellate review' but then rules 'in any event' on the merits, such a claim is procedurally defaulted." (quoting *Glenn v. Bartlett*, 98 F.3d 721, 724–25 (2d Cir. 1996))).  Accordingly, the Court may not review Petitioner's first and second grounds for *habeas* relief.

The Court is also procedurally barred from reviewing Petitioner's third claim for *habeas* relief, that Justice Schwartz failed to inquire whether he was taking any mental health medications

---

[3] New York courts have explicitly declined to hear challenges to the voluntariness of a plea by relying on N.Y. Crim. Proc. Law § 470.05 ("§ 470.05").  *See, e.g.*, *People v. Wright*, 191 N.Y.S.3d 687, 687 (2d Dep't 2023) (determining that a challenge to voluntariness of a plea "is unpreserved for appellate review since the defendant did not move to vacate his plea or otherwise raise this issue before the County Court" (citations omitted)); *People v. Vasquez*, 925 N.Y.S.2d 863, 864 (2d Dep't 2011) (relying on § 470.05 to find that "defendant's contention that his plea of guilty was not knowingly, voluntarily, and intelligently entered because he was not advised that he would have to register as a sex offender is unpreserved for appellate review"); *People v. Fareau*, 120 N.Y.S.3d 803, 803 (2d Dep't 2020) (relying on § 470.05 to find that defendant did not preserve his argument that his plea was not knowing and voluntary because the "the [trial court] failed to inquire about certain statements he made to the probation officer who prepared the presentence report," by not raising "this issue" before the trial court); *People v. Legnini*, 876 N.Y.S.2d 873, 873 (2d Dep't 2009) ("The defendant's challenge to the voluntariness of his plea of guilty . . . on the ground that he did not understand the crime to which he was pleading is unpreserved for appellate review as he never moved to vacate his plea on that basis." (citations omitted)); *People v. Williams*, 548 N.Y.S.2d 772, 773 (2d Dep't 1989) (reaching a similar conclusion).

when entering his plea.  Petitioner first raised this argument in his motion to set aside his sentence.

(SCR, Dkt. 21, at 410.)  The New York Supreme Court held that because Petitioner did not assert

this argument on appeal and instead asserted "a related but different issue," "the claim [was] barred

from review . . . pursuant to [N.Y. Crim. Proc. Law §] 440.10(2)(c)."  (*See id.* at 410–11; *see also*

*id.* at 141–46 (Petitioner making no mention of Justice Schwartz's inquiry as to mental health

medication in his direct appeal).)  N.Y. Crim. Proc. Law § 440.10(2)(c) ("Section 440.10(2)(c)")

directs courts to automatically deny motions to vacate a judgment where "appellate review or

determination [did not] occur[] owing to the defendant's . . . unjustifiable failure to raise such

ground or issue upon an appeal . . . unless the issue raised upon such motion is ineffective

assistance of counsel."  Section 440.10(2)(c) is a well-established and regularly followed rule.  *See*

*Gifford v. Artus*, No. 6:13-CV-6060 (MAT), 2013 WL 6837177, at *11 (W.D.N.Y. Dec. 26,

2013).[4]  Here, because the New York Supreme Court expressly relied on Section 440.10(2)(c) to

deny Petitioner's motion, and did so independently from its alternative holding that Petitioner's

argument lacked merit, *see Green*, 414 F.3d at 294; (SCR, Dkt. 21, at 412), the Court cannot review

Petitioner's third argument for *habeas* relief.  *See Levine v. Comm'r of Corr. Servs.*, 44 F.3d 121,

126 (2d Cir. 1995) (finding *habeas* claim procedurally barred in part due to State court's reliance

on Section 440.10(2)(c)); *Sweet v. Bennett*, 353 F.3d 135, 140 (2d Cir. 2003) (same); *Glover v.*

*Burge*, 652 F. Supp. 2d 373, 379 (W.D.N.Y. 2009) (determining that a trial court's reliance on

Section 440.10(2)(c) "operates to bar federal habeas review . . . under the adequate and

---

[4] *See also People v. Agramonte*, 889 N.Y.S.2d 883, at *3 (Sup. Ct. 2009) (finding claims barred by Section 440.10(2)(c) where "defendant asserted a claim of ineffective assistance of trial counsel in his previous motions, but did not mention any of the grounds asserted in the present motion"); *People v. Diaz*, 836 N.Y.S.2d 488, at *2 (N.Y. Sup. Ct. 2006) (determining Section 440.10(2)(c) barred consideration of sufficiency of the evidence claim because it was "an issue that could have been raised on defendant's direct appeal").

independent state ground doctrine" (citation omitted)); *Olivares v. Ercole*, 975 F. Supp. 2d 345, 362 (S.D.N.Y. 2013) (same); *Gonzalez v. Travis*, 172 F. Supp. 2d 448, 456 (S.D.N.Y. 2001) (same).

Petitioner has made no showing to overcome the procedural bar to these claims. A federal court may review a procedurally barred claim where petitioner shows "'cause' to excuse his failure to comply with the state procedural rule and 'actual prejudice resulting from the alleged constitutional violation.'" *Davila v. Davis*, 582 U.S. 521, 528 (2017) (quoting *Wainwright v. Sykes*, 433 U.S. 72, 84 (1977)). The court may find "cause" where "some objective factor external to the defense" prevented the petitioner from presenting a claim. *Coleman*, 501 U.S. at 753 (citation omitted). Once cause is established, the petitioner must also demonstrate "prejudice" by showing that "there is a reasonable probability that the result of the trial would have been different" had the alleged constitutional violation not occurred. *Strickler v. Greene*, 527 U.S. 263, 289 (1999) (internal quotation marks omitted). If the petitioner is unable to show cause and prejudice, his procedural default may only be excused if he can show that a fundamental miscarriage of justice would result from a failure to hear the claim on the merits, *i.e.*, "that he is actually innocent of the crime for which he has been convicted." *Dunham v. Travis*, 313 F.3d 724, 730 (2d Cir. 2002) (citing *Schlup v. Delo*, 513 U.S. 298, 321 (1995)). Here, Petitioner has made no showing of cause, prejudice, or a miscarriage of justice.

Thus, the Court may not review the first three arguments in Petitioner's *habeas* petition.

## II.   Petitioner's Claims That Are Entitled to Review on the Merits.

### A.   AEDPA Deference

Where a State court reaches the merits of a claim asserted in a Section 2254 *habeas* petition, the State court's decision is entitled to a deferential review. *Shinn*, 596 U.S. at 379. The Court applies this standard of review to the last State court decision rendering judgment on the

13

petitioner's federal claims. *See Clark v. Perez*, 510 F.3d 382, 394 (2d Cir. 2008) (citation omitted). Under AEDPA, an application for *habeas* relief shall not be granted unless the State court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see also Ryan v. Miller*, 303 F.3d 231, 245 (2d Cir. 2002). A State court adjudicates a decision on the merits where it "disposes of the claim 'on the merits'" and "reduces its disposition to judgment." *Norde v. Keane*, 294 F.3d 401, 410 (2d Cir. 2002) (quoting *Sellan v. Kuhlman*, 261 F.3d 303, 312 (2d Cir. 2001)). Even where "a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits." *Johnson v. Williams*, 568 U.S. 289, 301 (2013).[5]

Liberally construed, Petitioner seeks *habeas* relief under 28 U.S.C. § 2254(d)(1), contending that adjudication of his claims resulted in a decision contrary to, or an unreasonable application of, clearly established federal law. (Am. Pet. Dkt. 12, at ECF 5, 7–12 (alleging violations of due process and his right to effective assistance of counsel).) "Clearly established federal law 'refers to the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state-court decision.'" *Howard v. Walker*, 406 F.3d 114, 122 (2d Cir. 2005) (quoting *Kennaugh v. Miller*, 289 F.3d 36, 42 (2d Cir. 2002)). A State court decision is

---

[5] This presumption may be rebutted in "some limited circumstances," none of which are raised by Petitioner in this case. *See Johnson*, 568 U.S. at 301 (citing, as an example of an exception, where a "defendant claimed in state court that something that occurred at trial violated both a provision of the Federal Constitution and a related provision of state law, and . . . the state court, in denying relief, made no reference to federal law").

contrary to a "clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent." *Williams v. Taylor*, 529 U.S. 362, 405 (2000).  A decision is an "unreasonable application of" clearly established Supreme Court precedent if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular [petitioner's]" case.  *Penry v. Johnson*, 532 U.S. 782, 792 (2001) (quoting *Williams*, 529 U.S. at 407–08).

Review under AEDPA is deferential.  "A federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly."  *Gilchrist v. O'Keefe*, 260 F.3d 87, 93 (2d Cir. 2001) (quoting *Williams*, 529 U.S. at 411).  The question is whether the State court was "objectively unreasonable" "in rejecting petitioner's claim."  *See Ryan*, 303 F.3d at 245 (quoting *Sellan v. Kuhlman*, 261 F.3d 303, 309–310 (2d Cir. 2001) (internal quotation marks and alterations omitted)).  The petition may be granted only if "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).  The Second Circuit, however, has cautioned that while some degree of incorrectness beyond error is required, that degree "need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence."  *Gilchrist*, 260 F.3d at 93 (quoting *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000)).

### B.      Petitioner's Sentencing and Appeal Waiver Claims[6]

The Appellate Division's decision to enforce Petitioner's appeal waiver and abstain from hearing his challenge to his sentence was not contrary to, nor an unreasonable application of, clearly established federal law.  As numerous courts within this Circuit have noted, "[t]he Supreme Court has never addressed the requirements of a valid waiver to appeal a sentence, which means that habeas corpus review is not available."  *See Carson v. McGuinness*, No. 23-CV-6776 (KMK) (JCM), 2024 WL 5469225, at *9 (S.D.N.Y. Aug. 28, 2024) (quoting *Veliz v. Griffin*, No. 17-CV-0824 (BMC), 2017 WL 836560, at *3 (E.D.N.Y. Mar. 2, 2017)); *Rodriguez v. Lamanna*, No. 18-CV-7196 (ENV), 2020 WL 4926358, at *5 n.3 (E.D.N.Y. Aug. 19, 2020) (same); *see also Moore v. Lee*, No. 19-CV-6632 (DGL), 2021 WL 5086398, at *3 (W.D.N.Y. Nov. 2, 2021) ("A habeas claim asserting an invalid waiver of the right to appeal . . . generally does not present a constitutional question cognizable on habeas review." (citations omitted)); *Underwood v. Graham*, No. 06-CV-0674 (MAT), 2010 WL 184315, at *3 (W.D.N.Y. Jan. 15, 2010) (observing that "Petitioner does not point to, nor is the Court aware of, any federal precedent" concerning alleged errors in the colloquy concerning waiver of the right to appeal); *Nicholas v. Smith*, No. 02-CV-6411 (ARR), 2007 WL 1213417, at *11 (E.D.N.Y. Apr. 24, 2007) (explaining that because "petitioner has not demonstrated that the enforcement of the waiver denied him of any rights under the federal Constitution," the "state court's enforcement of the appeal waiver was not contrary to, nor an unreasonable application of, clearly established federal law"), *aff'd*, 329 F. App'x 313 (2d Cir. 2009).  Given "the lack of holdings from [the Supreme] Court" on this issue, it cannot be said

---

[6]  Respondents assert that Petitioner failed to exhaust this argument before the Appellate Division.  (Opp'n, Dkt. 20, at 39.)  The Court does not address this argument, because even assuming, *arguendo*, that Petitioner exhausted this claim, he would not be able to establish that the Appellate Division's decision was contrary to or an unreasonable application of clearly established federal law.

16

that the Appellate Division's decision was contrary to, or an unreasonable application of, clearly established federal law. *Cf. Carey v. Musladin*, 549 U.S. 70, 77 (2006); *Wright v. Van Patten*, 552 U.S. 120, 126 (2008) (declining to grant relief under Section 2254(d)(1) "[b]ecause [the Supreme Court's] cases give no clear answer to the question"); *Stenson v. Heath*, No. 11-CV-5431 (RPP), 2012 WL 3599110, at *5 (S.D.N.Y. Aug. 22, 2012) (same). The Court thus denies Petitioner *habeas* relief on the basis that his appeal waiver was not knowing or voluntary, and that his sentence was excessive.

### C.    Petitioner's Ineffective Assistance of Counsel Claims

The Court also declines to grant *habeas* relief based on Petitioner's claims of ineffective assistance of counsel as to both his trial and appellate counsel. A claim of ineffective assistance of counsel is evaluated under the two-pronged test established in *Strickland v. Washington*, 466 U.S. 668 (1984). *See Williams*, 529 U.S. at 390 (affirming that ineffective assistance of counsel claims "are squarely governed" by *Strickland*); *see also Bennett v. United States*, 663 F.3d 71, 84 (2d Cir. 2011) (applying *Strickland* to ineffective assistance of counsel claims). Under that two-pronged test, a defendant must show that "counsel's performance was deficient" and that "the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687. The defendant bears the burden of showing deficiency and prejudice. *Weaver v. Massachusetts*, 582 U.S. 286, 299 (2017).

The "deficiency" prong of *Strickland* requires the defendant to "show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. This standard of reasonableness encompasses a "wide range of professionally competent assistance," *id.* at 690, and requires the court to "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," *id.* at 689. In fact, a counsel's "strategic choices made after thorough investigation of law and facts relevant to

17

plausible options are virtually unchallengeable." *Id.* at 690–91; *see also Greiner v. Wells*, 417 F.3d 305, 319 (2d Cir. 2005) ("We will not normally fault counsel for foregoing a potentially fruitful course of conduct if that choice also entails a 'significant potential downside.'" (quoting *Sacco v. Cooksey*, 214 F.3d 270, 275 (2d Cir. 2000))). There are, however, no bright line or mechanical rules to what constitutes a deficient performance. Given the "countless ways to provide effective assistance in any given case," a court evaluating an ineffectiveness claim "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *See Strickland*, 466 U.S. at 689–90. "[T]he court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case." *Id.* at 690.

The "prejudice" prong of Strickland requires the defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. This standard does not require the defendant to show that counsel's deficient performance "more likely than not altered the outcome in the case." *Id.* at 693. But at the same time, merely showing that counsel's errors "had some conceivable effect on the outcome of the proceeding" is insufficient. *See id.*; *see also Lindstadt v. Keane*, 239 F.3d 191, 204 (2d Cir. 2001) ("The level of prejudice the defendant need demonstrate lies between prejudice that 'had some conceivable effect' and prejudice that 'more likely than not altered the outcome in the case.'" (quoting *Strickland*, 466 U.S. at 693)). Like the deficiency prong, the prejudice prong is ultimately concerned with the reliability and fairness of the proceeding, which can be undermined even if the defendant cannot show by a preponderance of the evidence that counsel's errors were outcome-determinative. *See Strickland*, 466 U.S. at 694. Accordingly, a "reasonable probability"

of prejudice under Strickland's second prong "is a probability sufficient to undermine confidence in the outcome." *Id.*

A court may reject an ineffective assistance claim if the defendant fails to make the requisite showing under either *Strickland* prong. *See id.* at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one."). The court therefore need not consider the prejudice prong if a defendant fails to demonstrate that his counsel's performance was objectively unreasonable. *See United States v. Vegas*, 27 F.3d 773, 778 (2d Cir. 1994). At the same time, the court may consider the prejudice prong first if it is "easier to dispose of [the defendant's] ineffectiveness claim." *Strickland*, 466 U.S. at 697; *Hill v. Lockhart*, 474 U.S. 52, 60 (1985) (declining to determine "whether there may be circumstances under which erroneous advice by counsel . . . may be deemed constitutionally ineffective" because the petitioner did not satisfy the prejudice prong); *see also Farrington v. Senkowski*, 214 F.3d 237, 242 (2d Cir. 2000) (declining to consider the deficiency prong because the defendant "was not prejudiced" by his attorney's conduct).

Where a State court has decided that counsel performed adequately, the Court's *habeas* review is "doubly deferential." *Dunn v. Reeves*, 594 U.S. 731, 739 (2021) (quoting *Burt v. Titlow*, 571 U.S. 12, 15 (2013)). "The *Strickland* standard is a general one, so the range of reasonable applications is substantial." *Premo v. Moore*, 562 U.S. 115, 122–23 (2011) (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)). "When [Section] 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.* at 123. Thus, if "a state-court decision on a prisoner's ineffective-assistance claim correctly identifies *Strickland* as the

controlling legal authority and, applying that framework, rejects the prisoner's claim," it would be difficult to "describe such a run-of-the-mill state-court decision as 'diametrically different' from, 'opposite in character or nature' from, or 'mutually opposed' to *Strickland*." *Williams*, 529 U.S. at 406.

       1.    <u>Trial Counsel's Alleged Failure to Provide Accurate Information about Petitioner's Sentencing Exposure</u>

Petitioner contends that Friedenberg was ineffective by failing to provide him with accurate information about the sentence he faced if he proceeded to trial. (Am. Pet., Dkt. 12, at ECF 5.) The Appellate Division, in addressing this argument, summarily dismissed it as "without merit." (SCR, Dkt. 21, at 234 (citation omitted).)[7] Because the State court did not "provide reasons for its dismissal of [P]etitioner's claim," the Court, in conducting its review under AEDPA, must "consider 'what arguments or theories . . . could have supported[] the state court's decision,' and may grant habeas only if 'fairminded jurists could [not] disagree that those arguments or theories are inconsistent with the holding in a prior decision of' the Supreme Court.'" *Lynch v. Dolce*, 789 F.3d 303, 311 (2d Cir. 2015) (quoting *Harrington*, 562 U.S. at 102). The Court finds that Petitioner has not met this high burden.

---

      [7] Despite the Appellate Division's cursory treatment of Petitioner's ineffective assistance of counsel claim, the Court finds that the Appellate Division rendered a decision on the merits, which is thus entitled to AEDPA deference. *Chambers v. Lilly*, 735 F. Supp. 3d 196, 239 (E.D.N.Y. 2024). The Appellate Division explicitly stated that it considered the merits of Petitioner's ineffectiveness claim and did not discuss any procedural bar to that claim. (SCR, Dkt. 21, at 234 (citation omitted).) Such a decision "constitutes an adjudication on the merits" in this Circuit. *See Bogan v. Bradt*, No. 11-CV-1550 (MKB) (LB), 2017 WL 2913465, at *8 (E.D.N.Y. July 6, 2017) (finding "that the use of the phrase 'meaningful representation,' along with the absence of any discussion of a procedural bar on this claim, constitutes an adjudication on the merits of Petitioner's ineffective assistance of counsel claims" (citations omitted)); *Zarvela v. Artuz*, 364 F.3d 415, 417 (2d Cir. 2004) (concluding that the Appellate Division's dismissal of a claim as "without merit" was an adjudication on the merits (citing *Brown v. Artuz*, 283 F.3d 492, 498 (2d Cir. 2002))).

The Appellate Division's decision could be supported by the conclusion that Petitioner has not met his burden of showing prejudice. Where, as here, a defendant asserts his counsel's performance affected the outcome of the plea process, the defendant may establish prejudice by showing that there is a "reasonable probability that he would not have entered his plea but for his counsel's deficiency." *See Premo*, 562 U.S. at 129 (citing *Hill*, 474 U.S. at 59); *Roy v. United States*, 347 F. Supp. 3d 230, 237 (S.D.N.Y. 2018) ("[I]n the context of a guilty plea that a petitioner seeks to vacate, the petitioner must show that there is a reasonable probability that, but for the challenged ineffective assistance, he would not have pleaded guilty and would have insisted on going to trial." (citation omitted)). Nowhere does Petitioner assert that, but for counsel's failure to provide accurate information about his sentencing exposure, he would have insisted on going to trial. (*See generally* SCR, Dkt. 21, at 138 (claiming that incorrect sentencing exposure "meaningfully contributed to [Petitioner's] decision to plead guilty"). This omission alone provided a sufficient basis for the Appellate Division to reject Petitioner's claim of constitutional ineffectiveness. *Tobon v. United States*, 132 F. Supp. 2d 164, 167 (S.D.N.Y. 2001) ("[P]etitioner's claim fails because he nowhere alleges that *but for* counsel's deficiency he would have insisted on going to trial."); *Hernandez-Cardona v. United States*, No. 10-CR-746 (DAB), 2016 WL 6561416, at *4 (S.D.N.Y. Nov. 1, 2016) ("[Petitioner] does not assert anywhere in his submissions that he would have insisted on going to trial in the absence of ineffective assistance of counsel."); *Dixon v. United States*, No. 14-CV-1223 (JS), 2018 WL 910522, at *6 (E.D.N.Y. Feb. 14, 2018) (similar). Nor could Petitioner convincingly make such an assertion. Even assuming, *arguendo*, that Friedenberg had informed Petitioner that his sentencing exposure was a maximum of 50 years,[8]

---

[8] Petitioner advanced this argument before the Appellate Division. (SCR, Dkt. 21, at 226–27.) The Court expresses no opinion on the correctness of this estimated sentence.

Petitioner's own statements during plea negotiations undermine any notion that he would have insisted on proceeding to trial. *See Hernandez-Cardona*, 2016 WL 6561416, at *4 (relying on statements made on the record to determine that a petitioner could not demonstrate that he would have insisted on going to trial). Indeed, at the plea proceeding, Petitioner expressed concern over the 24-year plea offer he had received, explaining that he wanted to "still have time left to live [his] life" after serving his sentence and that "every year [of a sentence] makes a big difference" given the medical conditions he suffered from. (SCR, Dkt. 21, at 25, 29.) Given that Petitioner initially balked at the prospect of serving 24 years in custody, there is no reason to believe that he would have chosen to go to trial and risked a 50-year sentence had he been informed of that possibility by his attorney. Petitioner also expressed concern at the plea proceeding that media coverage of his case "mean[t] [he] [wouldn't] have a fair impartial trial." (*Id.* at 25.) This fact further undermines the notion that even if Petitioner had been advised of a potential 50-year sentence, as opposed to a 90-year one, he would not have pled guilty to a 24-year plea offer and would have instead gone to trial. Accordingly, Petitioner cannot establish a constitutional violation under AEDPA's deferential standard with respect to his claim of ineffective assistance by his trial counsel.

2.   Trial Counsel's Alleged Failure to Present or Investigate Evidence Pertaining to Petitioner's Psychiatric Condition

Petitioner next asserts that his trial counsel was ineffective because she "deliberately withheld vital psychiatric evidence from the [trial] [c]ourt" that was "central to the defense" and "seriously compromised [Petitioner's] right to a fair plea bargain process." (Am. Pet., Dkt. 12, at ECF 12.) Petitioner appears to fault Friedenberg for deciding not to pursue an insanity defense, allegedly refusing to review his psychiatric records, and allegedly failing to investigate whether he was of sound mind to enter a guilty plea. (*See id.* at ECF 12, 36, 39, 41–42.) The New York

22

Supreme Court rejected this argument, finding that it was "clear that counsel, after reviewing the psychiatric records defendant had previously provided to her, made a strategic decision not to introduce them to the court, not to request a [competency] exam, and not to pursue a psychiatric defense to the charges." (SCR, Dkt. 21, at 415–16.) Moreover, in denying Petitioner's § 440 motion, the New York Supreme Court held that Petitioner had failed to demonstrate "that he suffered prejudice at the hands of [trial] counsel." (*Id.* at 414.)

As the New York Supreme Court correctly noted, in asserting that Friedenberg's performance was objectively unreasonable, a petitioner "must overcome the presumption" that, under the circumstances, the challenged action "might be considered sound trial strategy." *Strickland*, 466 U.S. at 689 (citation omitted); *see id.* at 690 (determining counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment"); (SCR, Dkt. 21, at 414 ("In order to prevail, a defendant must 'demonstrate the absence of strategic or other legitimate explanations for counsel's alleged shortcomings.'" (quoting *People v. Benevento*, 91 N.Y.2d 708, 713 (1998))). An attorney's choice not to pursue an argument that he or she reasonably believed would fail is not objectively unreasonable. *See Knowles*, 556 U.S. at 124–25; *Sexton v. Beaudreaux*, 585 U.S. 961, 965 (2018) (declining to find ineffective assistance based on counsel's failure to file a motion to suppress "because counsel reasonably could have determined that the motion to suppress would have failed" (citing *Premo*, 562 U.S. at 124)); *see also United States v. Panos*, No. 22-3158, 2024 WL 852812, at *4 (2d Cir. Feb. 29, 2024) (summary order) (determining that an attorney's failure to pursue action that was not colorable was a strategic choice and not ineffective assistance of counsel (citation omitted)); *Mendoza v. United States*, No. 11-CR-974-08 (CM), 2025 WL 1653423, at *4 (S.D.N.Y. June 11, 2025) (compiling cases).

23

As an initial matter, Petitioner's contention that counsel was ineffective for failing to review his psychiatric records is contradicted by the record. As discussed, Friedenberg explicitly stated before Justice Schwartz that she had "read the hospital reports." (SCR, Dkt. 21, at 57.) Accordingly, counsel could not have been ineffective on this basis. *Harris v. Poole*, No. 06-CV-0122T, 2009 WL 3762643, at *6 (W.D.N.Y. Nov. 9, 2009) (rejecting ineffective assistance of counsel *habeas* claim based on failure to investigate medical records because petitioner presented "nothing to support his claim that counsel did indeed fail to investigate [the relevant] medical records"); *Lopez v. Walker*, 239 F. Supp. 2d 368, 376 (S.D.N.Y. 2003) (agreeing with trial court that claims that attorney failed to investigate a topic were belied by the record); (*see id.* at 415 (New York Supreme Court reaching the same conclusion)).

Friedenberg also made a reasonable decision not to further investigate Petitioner was "of sound" mind to enter a plea—in effect, whether he was competent to proceed. Although Petitioner had a history of mental illness, he was able to participate in the proceedings, eloquently explained the considerations that ultimately led him to plead guilty, and stated under oath at the plea proceeding that he understood the consequences of his plea. (*See* SCR, Dkt. 21, at 18–19, 25–26, 32–34.) As Friedenberg reasonably noted, this lucid, articulate colloquy—in addition to her own observations of Petitioner—undermined any claims of incompetency. (*Id.* at 16, 65); *see People v. Andrews*, 911 N.Y.S.2d 221, 225 (3d Dep't 2010) (declining to find counsel was ineffective for failing to request a competency hearing despite history of mental illness and certain delusional beliefs because defendant was able to make "strategic decisions with his attorney and interact coherently with [the] Court during the proceedings"); *People v. Majors*, 901 N.Y.S.2d 424, 426 (3d Dep't 2010) (determining competency hearing was not warranted, "despite evidence that defendant suffers from mental illness," because he "participated in the plea colloquy, intelligently

24

answered County Court's questions and indicated that he understood the proceedings and the consequences of his guilty plea"); *People v. Perrotti*, 685 N.Y.S.2d 116, 118 (3d Dep't 1999) (rejecting notion that counsel was ineffective based on "a realistic evaluation of the likelihood of prevailing on the issue of defendant's competency" (citation omitted)); *see also Brown v. Walker*, 275 F. Supp. 2d 343, 349–50 (E.D.N.Y. 2003) (declining to grant *habeas* relief on the basis that counsel should have investigated competence to stand trial because "there [was] no indication in the record that petitioner did not understand the nature of the legal proceedings to which he was subjected or that he was incapable of communicating intelligently with his attorney" and because the "petitioner's on-the-record colloquies with the trial judge evince[d] an understanding of the proceedings").

For similar reasons, Friedenberg's decision not to pursue an insanity defense reflected sound trial strategy. This affirmative defense requires a defendant to show that, at the time of the offense, due to a mental disease or defect, a defendant lacked "substantial capacity to know or appreciate either" "[t]he nature and consequences of such conduct" or that "such conduct was wrong." N.Y. Penal Law § 40.15. "The mere fact that counsel was aware that petitioner suffered from psychiatric problems is insufficient to establish that she should have devoted her time to pursuing an affirmative defense." *Brown*, 275 F. Supp. 2d at 351; *Costello v. Griffin*, No. 16-CV-4189 (PKC), 2018 WL 6250992, at \*8 (E.D.N.Y. Nov. 28, 2018) (same). That is particularly true here, where Petitioner does not show that such a defense would have succeeded. Petitioner's conclusory assertions that, at the time of the charged incidents, he was "suffering from his psychiatric illnesses," (SCR, Dkt. 21, at 105), do not alone establish that he lacked substantial capacity at the time of the charged crimes to know that his conduct was wrong. *See People v. Zochowski*, 226 N.Y.S.2d 817, 819 (2d Dep't 1962) ("Allegations of a history of mental

disturbance do not, standing alone, prove insanity." (citation omitted)). Petitioner does not otherwise point to evidence in the record that would have made such a claim colorable. His medical records, for example, do not opine on his mental state at the time that he committed the charged offenses, (*see* SCR, Dkt. 21, at 292–367). *See also Brown*, 275 F. Supp. 2d at 351 (determining that a defendant's visits to the psychiatric ward while incarcerated "shed little light" on his mental state at the time of the crime); *Lithgow v. Keyser*, No. 1:21-CV-0998 (AJN) (SDA), 2021 WL 4943029, at *8 (S.D.N.Y. Sept. 18, 2021) (declining to grant *habeas* relief based on counsel's failure to pursue an insanity defense, in part because "Petitioner has offered no evidence supporting a viable insanity defense"), *report and recommendation adopted*, 2021 WL 4942824 (S.D.N.Y. Oct. 22, 2021); *Nicholas*, 2007 WL 1213417, at *15 (same). Petitioner therefore has not met his burden of showing "the absence of strategic or other legitimate explanations" for Friedenberg's failure to assert this defense. *People v. Crespo*, 854 N.Y.S.2d 608, 608 (4th Dep't 2008) (citation omitted); *Brown*, 275 F. Supp. 2d. at 351 ("Petitioner has offered the court no reason to believe that counsel's decision to limit investigation into an insanity defense was anything but a reasonable professional judgment made by an attorney who otherwise vigorously represented her client.").

In short, the New York Supreme Court's determination that Petitioner did not receive ineffective assistance of counsel because his attorney made a strategic choice not to pursue either a competency evaluation or insanity defense was not contrary to, or an unreasonable application of, clearly established law. *See Brown*, 275 F. Supp. 2d at 350–51; *Leiva v. Heath*, No. 10-CV-3069 (NRB), 2011 WL 2565487, at *9–10 (S.D.N.Y. June 22, 2011) (declining to grant *habeas* relief on the basis that counsel should have presented a psychiatric defense because such a defense had little chance of success); *Nicholas*, 2007 WL 1213417, at *15–16 (same).

**CONCLUSION**

Leasure's Petition for *habeas* relief under 28 U.S.C. § 2254 is denied.  A certificate of appealability shall not issue because the Court does not find that reasonable jurists could debate that the petition "should have been resolved in a different manner" or that it presents issues "adequate to deserve encouragement to proceed further."  *See Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)); *see also* 28 U.S.C. § 2253(c) ("A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right.").  The Court reopens the case for the purpose of deciding the Petition, and, accordingly, directs the Clerk of Court to enter judgment and close this case.

SO ORDERED.

/s/ *Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: February 25, 2026
Brooklyn, New York